**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALAN SCHMIDT,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN A. SKOLAS, et al.,** | : | **No. 12-3265** |
| **Defendants.** | : | |

**MEMORANDUM**

**Schiller, J.** **August 12, 2013**

Alan Schmidt, a former shareholder of Genaera Corporation ("Genaera") and a former unitholder of the Genaera Liquidating Trust ("GLT"), filed the Amended Verified Class Action and Shareholder Derivative Complaint for Damages and Rescission of Sales of Assets to Ohr and Dipexium ("Amended Complaint") against John A. Skolas, Leanne Kelly, John L. Armstrong, Jr., Zola B. Horovitz, Osagie O. Imasogie, Mitchell D. Kaye, Robert F. Shapiro, Paul K. Wotton, Robert DeLuccia, Griffin Securities,[1] David Luci, Steve Rouhandeh, Jeffrey Davis, Mark Alvino, GLT, Biotechnology Value Fund, Inc. ("BVF"), Ligand Pharmaceuticals, Inc. ("Ligand"), Xmark Capital Partners, LLC ("Xmark"), Argyce LLC ("Argyce"), Ohr Pharmaceuticals ("Ohr"), John L. Higgins, Genaera, SCO Financial Group ("SCO"), Dipexium Pharmaceuticals, LLC ("Dipexium"), MacroChem Corporation ("MacroChem"), Access Pharmaceuticals, Inc. ("Access"), and Mark N. Lampert for breach of their fiduciary duties, as well as aiding and abetting thereof, arising out of the liquidation of Genaera.

Eight groups of Defendants have moved to dismiss the Amended Complaint: (1) Trustee Argyce and Skolas ("Trustee Defendants"); (2) Directors and Officers Kelly, Armstrong, Horovitz,

---

[1] Plaintiff has voluntarily dismissed his claims against Griffin Securities. (ECF Document No. 79.)

Imasogie, Shapiro, and Wotton ("D&O Defendants"); (3) Xmark and Kaye ("Xmark Defendants"); (4) Dipexium, DeLuccia, and Luci ("Dipexium Defendants"); (5) BVF and Lampert ("BVF Defendants"); (6) Ligand and Higgins ("Ligand Defendants"); (7) MacroChem, Access, Rouhandeh, Davis, Alvino ("Access Defendants"); and (8) Ohr, on grounds including statute of limitations and lack of personal jurisdiction. For the reasons that follow, the Court grants Defendants' motions to dismiss.[2]

## I. BACKGROUND

This action stems from the dissolution of Genaera, a biotechnology company that developed pharmaceutical drugs and held licenses to intellectual property and patents. (Am. Compl. ¶ 63.) Genaera was a Delaware corporation with its principal place of business in Pennsylvania that owned the rights to certain high value assets with "the potential to earn high returns for Genaera and its stockholders." (*Id.* ¶¶ 11, 65.) It dissolved on June 12, 2009, and its assets were transferred to GLT, a Delaware entity, which was managed by Defendant Argyce as trustee. (*Id.* ¶¶ 24, 151-52.) The allegations of the Amended Complaint pertain mostly to D&O Defendants' participation in a scheme to dissolve Genaera, and Trustee Defendants' sale of the assets in GLT for less than their value to Genaera insiders and their affiliates, at the expense of Genaera shareholders.

### A. Dissolution of Genaera

In April 2009, Genaera's Board of Directors announced that the company's prospects were "not promising" and stated that dissolution and liquidation would return the greatest value to

[2] The only Defendant that has not moved to dismiss is SCO. However, for the same reasons that apply to all other Defendants, Plaintiff's claims cannot be sustained against SCO. The claims against SCO are also dismissed.

stockholders. (*Id.* ¶ 123.) On April 18, 2009, the Board unanimously approved—and recommended that shareholders vote to approve—a plan to dissolve and dispose of all the company's assets and make distributions to stockholders by establishing a liquidating trust. (*Id.* ¶ 125.) Defendant Kaye was not at this meeting. (*Id.*) The proxy statement falsely stated that no Genaera officers or directors would profit from the dissolution, and did not accurately describe how promising certain Genaera assets were, among other alleged misrepresentations. (*Id.* ¶¶ 128-29.) The proxy statement also did not explain that Defendant Argyce had already been selected as trustee, even though Defendant Skolas—one of Argyce's only employees—had been fired as Genaera's CFO in 2007. (*Id.* ¶¶ 138, 154-55.) Following the announcement of Board approval of the Plan of Dissolution, Genaera stock declined dramatically. (*Id.* ¶ 139.) At a special meeting of stockholders on June 4, 2009, the stockholders—the two largest of which were Xmark and BVF—approved the Board's recommendation to adopt the Plan of Dissolution. (*Id.* ¶¶ 124, 140-41.) Genaera filed Articles of Dissolution with the Delaware Secretary of State on June 12, 2009, and the company's assets and liabilities were transferred to GLT. (*Id.* ¶ 151.) Thereafter, each outstanding share of Genaera common stock was canceled and replaced by a unit in GLT. (*Id.* ¶¶ 159-60.) The trustee had three years to "monetiz[e]" Genaera's assets. (*Id.* ¶ 187.) GLT terminated upon its final distribution of assets on March 31, 2011. (Defs. Argyce LLC's and John A. Skolas's Mot. to Dismiss Am. Compl. [Trustee's Mot. to Dismiss] Ex. 19 [Grantor Letter Statement of Income].)

**B. Post-Dissolution Sale of Assets**

*1. Aminosterol Assets*

Genaera owned Squalamine and Trodusquemine compounds ("Aminosterol Assets"). (Am. Compl. ¶ 226.) One of these compounds was used for eye drops to treat age-related macular

degeneration. (*Id.* ¶ 229.) On July 8, 2009, the Trustee accepted a $50,000 down payment on the sale of the Aminosterol Assets for $200,000 to BBM Holdings, Inc., the predecessor to Ohr. (*Id.* ¶¶ 218, 224.) On August 12, 2009, the Trustee publicly reported that the Aminosterol Assets had been sold in May 2009. (*Id.* ¶ 220.) On August 21, 2009, Ohr filed an 8-K Form announcing its purchase of the Aminosterol Assets, with the purchase agreement attached. (Trustee's Mot. to Dismiss Ex. 7 [Aminosterol 8-K Form].) The Trustee "had the opportunity to sell the assets" for a higher price, and there was no public announcement of bidding for the assets. (Am. Compl. ¶¶ 219, 225.)

*2. Pexiganan Asset*

In 1999, Genaera developed Pexiganan, a topical cream for the treatment of diabetic foot infections. (*Id.* ¶ 82.) In July 2007 and again in October 2007, MacroChem licensed the right to develop Pexiganan from Genaera, with the possibility for Genaera to earn up to $35 million and ten percent royalty payments based on certain developmental milestones. (*Id.* ¶¶ 95-96.) In 2008, MacroChem "abruptly" stopped investing in the development of Pexiganan. (*Id.* ¶ 107.) In February 2009, Access acquired MacroChem and "ceased development of MacroChem's dermatology products, including Pexiganan." (*Id.* ¶¶ 112-13.) D&O Defendants knew that Genaera had a right under the licensing agreement with MacroChem to demand the return of Pexiganan if MacroChem refused to develop the drug, but they did not make any such demand. (*Id.* ¶ 114.) In December 2009, Pexiganan was returned to GLT, as announced in a March 2010 press release by GLT. (Trustee's Mot. to Dismiss Ex. 17 [GLT March 2010 Update].) According to Plaintiff, Trustee Defendants terminated the previously existing licensing agreement with MacroChem in order to allow Dipexium Defendants to obtain the rights to Pexiganan without the royalty and milestone obligations of the original licensing agreement. (Am. Compl. ¶¶ 206, 207, 210.)

After Genaera's dissolution, on January 11, 2010, the Trustee publicly solicited bids for Pexiganan, with a deadline for bids of February 12, 2010. (*Id.* ¶ 206.) Although the Amended Complaint does not allege the exact date of the transaction with Dipexium, a February 19, 2010 GLT update to unitholders announced multiple expressions of interest in Pexiganan, and a March 2010 GLT update reported negotiations for sales of the asset. (Trustee's Mot. to Dismiss Ex. 16 [GLT Feb. 19, 2010 Update]; GLT March 2010 Update.) In an update on May 21, 2010, GLT declared that "the Trust ha[d] sold substantially all of the assets of the Trust and its predecessor in interest, Genaera Corporation." (Trustee's Mot. to Dismiss Ex. 24 [GLT May 21, 2010 Update]; *see also id.* Ex. 14 [GLT July 2010 Update] (describing sale of Pexiganan under "January-May 2010" heading).) The Dipexium website announced the acquisition of Pexiganan "soon after th[e] transaction." (Am. Compl. ¶ 213.)

*3. Interlukin 9 ("IL9") Asset*

Since 2007, Genaera had owned a licensor interest in the IL9 antibody program for asthma, which it licensed to MedImmune, LLC ("MedImmune"). (*Id.* ¶ 72.) Genaera could have received up to $54 million in payments and royalties from MedImmune if IL9 reached certain milestones in its development. (*Id.* ¶ 77.) On May 18, 2010, Trustee Defendants sold IL9 to Ligand. (*Id.* ¶ 176.) Ligand then sold half its interest in IL9 to BVF, which had previously owned more than fifteen percent of Ligand stock. (*Id.* ¶¶ 177, 190.) This subsequent transaction was not mentioned in GLT's purchase agreement with Ligand. (*Id.* ¶ 177.) GLT sent a "Brief Update to Unitholders" dated May 21, 2010, in which it announced the sale of IL9 to Ligand for $2.75 million and revealed that Ligand conveyed half of its interest to BVF. (GLT May 21, 2010 Update.) In addition, Ligand filed an 8-K Form that also announced the details of the transaction. (Trustee's Mot. to Dismiss Ex. 22 [IL9 8-K

Form].)

### C. Plaintiff's Lawsuit

Schmidt, a former investment professional and former high-ranking employee of Brown Brothers Harriman, was a stockholder of Genaera from 1998 until its dissolution on June 12, 2009, and thereafter became a unitholder of GLT by operation of law. (Am. Compl. ¶¶ 10, 60.) "[T]hroughout the years[, Schmidt] has held many conversations with Genaera officers and directors" regarding the assets at issue and their values and prospects. (*Id.* ¶ 10.) He filed this lawsuit on June 8, 2012, on behalf of himself and all other former shareholders of Genaera, on behalf of all other unitholders of GLT, and derivatively on behalf of Genaera and GLT. (*Id.* ¶¶ 47, 53, 59.) Schmidt filed the Amended Complaint on December 19, 2012, and the above-listed groups of Defendants filed motions to dismiss on February 4, 2013. The Court held oral argument on the motions to dismiss on July 10, 2013. The remaining counts are: breach of fiduciary duty against D&O Defendants, and all other Defendants for aiding and abetting thereof, on behalf of the stockholder class; breach of fiduciary duty against Trustee Defendants, and all other non-D&O Defendants for aiding and abetting thereof, on behalf of the unitholder class; corporate waste against D&O Defendants, and all other Defendants for aiding and abetting thereof, derivatively on behalf of Genaera; breach of fiduciary duty by controlling shareholder against Xmark Defendants and BVF Defendants, and all other Defendants for aiding and abetting thereof, on behalf of the stockholder class; punitive damages against all Defendants; rescission of Aminosterol Assets sale from Ohr; and rescission of Pexiganan sale from Dipexium.[3]

[3] Plaintiff has agreed to dismiss without prejudice the following claims: illegal vote selling; voiding dissolution vote; disgorgement of insider trading profits; and violations of 14(a) of the Securities Act. (Pl.'s Mem. of Law in Opp'n to Director and Officer Defs.' Mot. to

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Personal Jurisdiction

The plaintiff bears the burden of demonstrating facts that establish personal jurisdiction when a defendant raises a personal jurisdiction defense. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). The plaintiff's factual allegations are taken as true and all factual disputes are drawn in the plaintiff's favor for the purpose of this analysis. *See id.* Establishing a prima facie case for the exercise of personal jurisdiction requires the plaintiff to demonstrate "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). The plaintiff must offer "sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone" in its effort to withstand the defendant's motion. *Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990).

If the plaintiff meets this burden, the defendant must establish the presence of other considerations that would render jurisdiction unreasonable to prevail on its motion. *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 602 (E.D. Pa. 2010) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992)).

### B. Motion to Dismiss for Failure to State a Claim

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court should accept the complaint's allegations as true, read

---

Dismiss Am. Compl. at 4 n.3 [Pl.'s Resp. to D&O Defs.]; Pl.'s Mem. of Law in Opp'n to Defs. Xmark Capital Partners, LLC and Mitchell D. Kaye's Mot. to Dismiss Am. Compl. at 7 n.2.)

those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "But a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.*; *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a Rule 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can infer only the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

## III. DISCUSSION

### A. Personal Jurisdiction

Defendant Ohr has moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss . . . ." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Yet Plaintiff has attempted to do just that. Ohr attached to its motion to dismiss the Declaration of its CEO, Irach B. Taraporewala. (Taraporewala Decl.) The Declaration states that Ohr is a Delaware corporation with headquarters in New York (and formerly in Utah) that has never had an office or employee based in Pennsylvania, nor has it sold any goods there. (*Id.* ¶¶ 3-4.) The negotiations and execution of the asset purchase agreement between Ohr and GLT, a Delaware entity, did not take place in Pennsylvania; the closing of the agreement occurred in New York, and GLT was represented by New Jersey counsel. (*Id.* ¶¶ 6-7, 9.) The asset purchase agreement is additionally governed by Delaware law and has a forum-selection that selects Delaware as the forum for any disputes. (*Id.* Ex. A [Aminosterol Assets Purchase Agreement] §§ 8.8, 8.9.)

Plaintiff, conversely, has filed no affidavits in support of his argument for personal jurisdiction. In fact, the Amended Complaint fails even to include Ohr in its list of parties and otherwise makes no jurisdictional allegations about Ohr. (Am. Compl. ¶¶ 11-41.) The Court cannot

do Plaintiff's work for him by searching for possible contacts between Ohr and Pennsylvania. Plaintiff bore this burden and failed to carry it. *See, e.g.*, *Junge v. Wheeling Island Gaming, Inc.*, Civ. A. No. 10-1033, 2010 WL 4537052, at *4 (W.D. Pa. Nov. 2, 2010); *Olympia Steel Bldgs. Sys. Corp. v. Gen. Steel Domestic Sales, LLC*, Civ. A. No. 06-1597, 2007 WL 1816281, at *4-5 (W.D. Pa. June 22, 2007) (finding no personal jurisdiction over defendant where, "[d]espite their clear burden, [plaintiffs] have not submitted any evidence, in the form of sworn affidavits or otherwise," related to personal jurisdiction).

In response to Ohr's argument, Plaintiff, without adducing additional facts supporting personal jurisdiction, seeks limited jurisdictional discovery. A plaintiff is entitled to jurisdictional discovery if he "presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the defendant] and the forum state." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (citation omitted). "A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Id.* Here, there are no factual allegations—set forth with "reasonable particularity" or otherwise—to support jurisdictional discovery. Plaintiff's concession that he is "not aware of the extent of activities or contacts that Defendant Ohr has had with the Commonwealth" reveals his request for jurisdictional discovery to be nothing more than a fishing expedition. (*See* Mem. of Law in Opp'n to Def. Ohr Pharmaceutical, Inc.'s Mot. to Dismiss Am. Compl. at 18.)

Given Plaintiff's failure to provide affidavits or other competent proof of personal jurisdiction, make any basic allegations of the Court's personal jurisdiction over Ohr in his Amended Complaint, or otherwise support his request for limited jurisdictional discovery with "reasonable

particularity," the Court finds that it lacks personal jurisdiction over Ohr Pharmaceuticals. The claims against it are therefore dismissed.

**B. Statute of Limitations**

The parties agree that Pennsylvania's two-year statute of limitations applies to Plaintiff's claims for breach of fiduciary duty and corporate waste, and aiding and abetting thereof. *See* 42 Pa. Cons. Stat. § 5524(7); (Mem. of Law in Opp'n to Defs. Argyce LLC's and John A. Skolas' Mot. to Dismiss Am. Compl. at 8 & n.4; *e.g.*, Director and Officer Defs.' Mot. to Dismiss Am. Compl. at 21-22.). Therefore, given that Plaintiff filed this lawsuit on June 8, 2012, Plaintiff's claims cannot have accrued before June 8, 2010 in order to be timely.

To grant a motion to dismiss on statute of limitations grounds, the statute of limitations defense must be clear on the face of the complaint. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Plaintiff has, in fact, conceded that he "missed the two-year period by a couple of weeks." (Oral Arg. Tr. at 22.) He therefore relies on the discovery rule to toll the running of the limitations period. (*See, e.g.*, Mem. of Law in Opp'n to Defs. Argyce LLC's and John A. Skolas' Mot. to Dismiss Am. Compl. at 8.)

A federal court applying a state statute of limitations period applies state tolling rules. *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (citations omitted). The Pennsylvania discovery rule tolls the statute of limitations until the plaintiff knew, or should have known through the exercise of reasonable diligence, of the injury and its cause. *Wise v. Mortg. Lenders Network USA, Inc.*, 420 F. Supp. 2d 389, 395 (E.D. Pa. 2006). However, the discovery rule is implicated "in only the most limited of circumstances." *Goleman v. York Int'l Corp.*, Civ. A. No. 11-1328, 2011 WL 3330423, at *4 (E.D. Pa. Aug. 3, 2011). To this end, lack of knowledge is insufficient to toll the

running of the statute of limitations. *See Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983).

Rather, "the salient point giving rise to [the discovery rule's] application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). Plaintiff bears the burden of establishing this inability. *See Donovan v. Idant Labs.*, 625 F. Supp. 2d 256, 266 (E.D. Pa. 2009), *aff'd sub nom. D.D. v. Idant Labs.*, 374 F. App'x 319 (3d Cir. 2010). Yet when the Court asked Plaintiff's counsel at oral argument to explain the greater-than-two-year period after Plaintiff received notice of the transactions before he brought suit, counsel responded that "Mr. Schmidt was putting together all the facts and circumstances." (Oral Arg. Tr. at 29.) As the Court noted in response, to toll the statute of limitations on every plaintiff's mere assertion that he needed time to put together all the facts and circumstances would eviscerate the very concept of a limitations period. (*Id.* at 29-30.); *see also Ingenito v. AC & S, Inc.*, 633 A.2d 1172, 1175 (Pa. Super. Ct. 1993) ("[T]he [discovery] rule cannot be applied so loosely as to nullify the purpose for which a statute of limitations exists.").

Indeed, Plaintiff has never pointed to exactly what information ultimately brought his cause of action to his attention. He avers generally that the 2011 release of the Trustee's financial statements for fiscal year 2010 gave him the necessary information. (*See* Oral Arg. Tr. at 20 ("[T]hat was the first time that there was enough information [for] the plaintiff . . . to actually discern the nature of the injury, and where it was caused and how it came about.").) Yet by May 2010, all of the relevant transactions had occurred and been publicly announced, through a combination of updates from GLT, public SEC filings, and press releases from the acquiring companies. It is not clear what more information Plaintiff wanted. Although he implies that he was unaware of the value of the

assets sold until acquiring companies were able to develop or finance them, (*See* Am. Compl. ¶¶ 214-15), the Amended Complaint is replete with allegations of the great promise these assets showed prior to Genaera's dissolution in 2009, (*See id.* ¶¶ 79, 105, 178, 203-05). If Plaintiff cannot articulate why, in spite of his reasonable diligence, his cause of action was unknowable to him before June 2010, he has not met his burden. *See Brawner v. Educ. Mgmt. Corp.*, 513 F. App'x 148, 151 (3d Cir. 2013) (affirming grant of motion to dismiss because cause of action was not tolled where plaintiff failed to show that any new information received after the expiration of the statute of limitations "was essential to the commencement of a suit").

"Where . . . reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." *Fine*, 870 A.2d at 858-59. The fact that a plaintiff "may not have been aware of the 'full extent' of the possible injury does not save his claims." *Brawner*, 513 F. App'x at 151 (quoting *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011)). Plaintiff was on notice that GLT was selling Genaera's core assets, and was provided with regular updates on negotiations, transactions, and prices; all of this information was presented to him before June 8, 2010. Plaintiff's explanation that he was "putting together all the facts and circumstances" does not reflect an inability to know of his cause of action in spite of reasonable diligence. Plaintiff has not met his burden of demonstrating that the discovery rule should apply here. *See Goleman*, 2011 WL 3330423, at *4-5; *Garcia-Valentie v. McKibbin*, Civ. A. No. 06-5097, 2007 WL 2022067, at *5 (E.D. Pa. July 9, 2007).

Finally, Plaintiff also relies on the fraudulent concealment doctrine in an attempt to toll his claims. Under Pennsylvania law, the fraudulent concealment doctrine requires an "affirmative and

independent act of concealment that would divert or mislead the plaintiff from discovering the injury," which is lacking here. *See Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991). Plaintiff would be hard-pressed to point to any act of concealment here, given that every transaction to which Plaintiff objects was announced publicly by GLT, announced publicly by the purchaser, filed publicly with the SEC, or some combination of the three. Fraudulent concealment does not toll Plaintiff's claims.

**C. Leave to Amend the Complaint**

Plaintiff has already amended his Complaint once. "Although Federal Rule of Civil Procedure 15(a) states that leave to amend 'shall be freely given when justice so requires,' . . . leave to amend need not be granted when amending the complaint would clearly be futile." *Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001) (quoting Fed. R. Civ. P. 15(a)(2)). *Cowell* specifically notes that repleading is futile if a claim cannot overcome the statute of limitations. *Id.* Because Plaintiff cannot change the dates on which the transactions he challenges occurred, further amending his complaint would be futile.

Likewise, though Plaintiff has agreed to dismiss certain counts without prejudice, the Court dismisses them with prejudice because they, too, are barred by their statutes of limitations. *See* 15 U.S.C. § 78i(f) (setting forth three-year statute of repose for violations of Section 14(a), which allegedly occurred in proxy statement issued May 14, 2009); 42 Pa. Cons. Stat. § 5524(7) (providing two-year statute of limitations for fraud, where alleged vote selling occurred on June 4, 2009 and alleged insider trading occurred June 5, 2009). Finally, the claims for the remedies of punitive damages and rescission cannot stand now that the underlying causes of action have been dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are granted. An Order consistent with this Memorandum will be docketed separately.